**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

JENIYAH WARE                                       )
223 Lakeside Drive                                 )
Apt # 201                                          )
Greenbelt, Maryland  20770                         )
                          Plaintiff,               )
v.                                                 )   Civil Action No._____
                                                   )
DISTRICT OF COLUMBIA                               )   **JURY TRIAL DEMANDED**
A Municipal Corporation                            )
Serve: Muriel Bowser                               )
John A. Wilson Bldg.                               )
1350 Pennsylvania Ave., NW                         )
                                                   )
GOLDEN DIVERSITY, INC.                             )
Patricia Brown, CEO                                )
And Registered Agent                               )
5625 Allentown Road                                )
Suitland, Md 20746                                 )
                                                   )
                          Defendants.              )
_____)

## COMPLAINT FOR DAMAGES

Comes now Plaintiff, Jeniyah Ware ("Plaintiff"), by and through undersigned counsel and hereby files this Complaint for damages against Defendants District of Columbia ("District") acting by and through its agents and employees in the Family Court Social Services Division ("CSSD"); the Department of Youth Rehabilitative Services ("DYRS"); and, Defendant Golden Diversity, Inc. ("Golden"), a former District of Columbia ("D.C") corporation and contracted vendor with Defendant District.

This case arises out of the preventable and reasonably foreseeable repeated sexual contact and abuse carried out on Plaintiff while a minor who, at the age of thirteen (13)-years-old, was

1

arrested and entered into the D.C. juvenile justice system on October 27, 2016. Subsequent to her arrest and during pertinent times, Plaintiff remained under the supervision and care of the D.C. Court Social Services Division ("CSSD") and/or in the custody of its Department of Youth Rehabilitative Services (DYRS).

Defendants are liable for assault and battery; sexual abuse; gross and general negligence; negligent training, supervision and retention; *and* intentional/negligent infliction of emotional distress. As a direct and proximate result of Defendants' actions and inactions, Plaintiff has suffered physical and psychological harm and injury, humiliation, anxiety, stress, mental anguish, low self-esteem and other emotional pain and suffering.

## JURISDICTION AND VENUE

This Court has original jurisdiction of Plaintiff's claims pursuant to 28 U.S.C. §§ 1331 and 1343; 42 U.S.C. §1983 and 42 U.S.C. §1988. Venue in this case is based upon 28 U.S.C. §1343(a)(3), as the incidents which give rise to this case occurred in the District of Columbia. Plaintiff has timely filed notice upon the District consistent with D.C. Code § 12-309.

## THE PARTIES

1. Plaintiff, Jeniyah Ware ("Ware") DOB is November 2, 2002. At all times relevant herein, Ware was a 13 or 14-year-old African-American teenager, minor citizen, and resident of the District of Columbia. During pertinent times Plaintiff was in a pre-adjudicated juvenile probation status under the management and control of Family Court Social Services Division ("FCSSD"). Also, at relevant times Jeniyah Ware periodically resided in court-ordered D.C. Youth Shelter Homes and/or the D.C. Youth Center. Both continuums of placement were operated and supervised by the District's Youth and Rehabilitation Services ("DYRS"). At oth-

er times pending probation, Ware resided with her father at 5103 Sheriff Road, N.E. Washington, D.C. 20019.

2. Defendant District of Columbia is a municipal entity acting herein by and through the following agencies: FCSSD and DYRS. FCSSD and DYRS, operate under the District of Columbia's judicial and executive branches, respectively. The Mayor governs the District of Columbia pursuant to D.C. Code 1-242 § 711(a).

3. FCSSD is the sole probation agency for pre-and post-adjudicated juveniles advising and serving the D.C. Family Court.  At all times referenced herein, FCSSD acted by and through its then Director Teri Odom ("Odom"), its officials, employees, and agents. As Director Odom was responsible for its' policies, practices, and operations.

4. DYRS is an agency operated within the D.C. Department of Health and Human Services. DYRS operates and manages the continuum of secure and unsecure community-based residential facilities for pre-and post-adjudicated juveniles.

5. At all times herein DYRS acted by and through its then Director, Clinton Lacey, (hereinafter "Lacey"), its officials, employees, and agents.  As Director, Mr. Lacey was responsible for the Agency's policies, practices, and operation.

6.  Defendant Golden Diversity, Inc., ("Golden") at all relevant times herein was a D.C. contractor located at 405 H St NE #B, Washington, DC 20002. At all relevant times, Patricia Brown was Golden's CEO and Registered Agent.

3

7. On information and belief, a Statement of Work (SOW) was signed between Golden and FCSSD pursuant to which Golden provided tutorial services to pre and post-adjudicated youth in and under the supervision of the District's juvenile justice system.

8. Golden's tutor employees were hired and assigned to deliver services at CSSD juvenile-centered operated programs, including the Leadership of Today in Solidarity ("LOTS") and Balance and Restorative Justice ("BARJ") Drop-in Centers.  Both programs were staffed and managed by D.C. juvenile probation officers under the supervision of CSSD.

9. At all material times, Anthony Brooks was employed by Golden to provide tutorial services as contracted between Golden and the District of Columbia to pre-adjudicated juveniles placed at the LOTS and BARJ D.C. run programs. In his capacity as tutor, Brooks was monitored supervised and evaluated by CSSD employees and agents.

10. Based on Brooks' employment, the principle of *respondeat superior* applies where appropriate.

11. After he was arrested and charged, on October25, 2018 Anthony Brooks pled guilty in the Circuit Court for Charles County, Maryland to transporting minors, including Plaintiff, for sexual activity. He was sentenced, December 14, 2018, pursuant to 18 U.S. Code §2423.

## <u>FACTS COMMON TO ALL COUNTS</u>

12. Plaintiff incorporates all paragraphs of this Complaint as if fully set forth under this count and further alleges:

13. Plaintiff was a minor at all pertinent times.

4

14. On October 27, 2016, Plaintiff was arrested on a misdemeanor charge of unlawful entry and entered the juvenile justice system. She appeared before the Family Court-Juvenile and Neglect Branch at age thirteen years old.

15. During the juvenile intake process, FCSSD employees and agents interviewed Plaintiff prepared a social and family history write-up.

16. At the initial hearing, CSSD intake personnel represented to the Court that Plaintiff was emotionally and physically and emotionally vulnerable "perceived as a high risk for sexual exploitation and victimization."

17. Based on CSSD representation on October 27, 2016, the Juvenile Court ordered Plaintiff detained at a DYRS operated D.C. Youth Shelter.

18. Between October 27, 2016, and September 2017, Plaintiff was order detained in a continuum of custodial juvenile facilities, including unsecured community-based shelter homes and the District's secured YSC, all which operated under the District's DYRS.

19. On November 15, 2016 a court ordered psychoeducational evaluation was administered Plaintiff. The assessment findings documented in the Report confirmed that Plaintiff was suffered from emotional harm including the possibility of victimization via sexual trafficking.

20. A copy of the Confidential Psychoeducational Evaluation Report (Report), dated, December 2, 2016, was accessible and provided to Family Juvenile Court and all juvenile youth service providers involved in Jeniyah Ware's pre-adjudication case management, residential placements, and ultimate probation supervision. This included CSSD and DYRS officials, agents, and employees.

21. On or around March 15, 2017, Plaintiff's case was certified to the District's Juvenile Behavioral Diversion Program ("JBDP") for an eligibility determination. As a condition of her release, Plaintiff was ordered to attend a Balance and Restorative Justice ("BARJ") Drop-In Center. She was assigned to the LOTS program operated at the Northeast Satellite BARJ Office (NESO), located at, 118 Q Street, NE, Washington, D.C.

22. BARJ Centers were created as service delivery stations for pre-and post-adjudicated juveniles and their families. They are managed, operated, and staffed by the District of Columbia's CSSD officials, agents, and employees.

23. On March 29, 2017, Ware signed a Juvenile Behavioral Diversion Program 'Participation Agreement."

24. At the directive of CSSD, Plaintiff's Diversion requirements mandated her attendance and participation in the all-female, Leadership of Today in Solidarity ("LOTS") Unit housed and connected to the Northeast BARJ satellite center located, 118 Q Street, NE, D.C.

25. At all pertinent times, through a Statement of Work ("SOW") Defendant Golden Diversity had an independent contractor service-delivery relationship with the CSSD to provide tutoring services to pre- and post-adjudicated juveniles at BARJ Centers.

26. As a provider of in-person tutoring services to pre-and post-adjudicated juveniles placed at the LOTS/ BARJ Center, Golden simultaneously shared responsibility for training, managing, and supervising its tutors with the District's FCSSD officials and employees.

27. Defendant Brooks hired as a tutor in 2016 by Defendant Golden Diversity, Inc., remained in that position assigned to the LOTS/BARJ Center located at 118 Q Street, N.E., D.C uninter-

rupted through the CSSD and court-sanctioned placement of Ware at the same LOTS/BARJ Drop-In-Center Center in March 2017.

28. As Golden's employee, Brooks' day-to-day responsibilities and interactions with the juvenile female participants were monitored and under FCSSD control and direct supervision.

29. As far back as October 2016, FCSSD officials and Golden representatives were notified in a written memorandum by Acting Supervisory Probation Officer, Stephanie Lea, that she observed FCSSD-affiliated tutor, Anthony Brooks, while acting in his capacity as tutor, exhibit inappropriate and predatory-like behaviors toward female juvenile participants at the Q Street LOTS/BARJ Center.

30. Additionally, in 2016 another FCSSD Probation Officer, Denise Tennant-Bryan, also reported on-site inappropriate behaviors by Anthony Brooks.

31. Despite receiving notice of Brooks' predatory-like behaviors from more than one source, Defendants' officials, supervisors and administrators failed to fulfill mandatory reporting obligations and to terminate and remove Brooks from his employment. Instead, Defendants ignored the accusations and retained Brooks as a tutor at the same location for additional vulnerable female teenage girls in the juvenile justice system.

32. As a condition and term of her diversion program requirements, on or around March 15, 2017, Defendant mandated Plaintiff's assignment and ongoing participation in the Q Street LOTS/BARJ Center. At that time Anthony Brooks remained on staff as a tutor there.

33. Despite documentation and knowledge of Brooks' predatory behavior dating back to 2016, coupled with Plaintiff's well documented vulnerable profile, Defendants affirmatively select-

ed and assigned Plaintiff to the LOTS/BARJ on Q Street despite having other program options to choose from.

34.  Defendant's agency further assigned Brooks to provide one-on-one tutorial services to Plaintiff.

35. On information and belief, from March 15, 2017 through September 20, 2017, Defendant Brooks caused certain personal, sexual and other harmful contact and abuse upon Plaintiff.

36. Between March and September 2017, Plaintiff resided in both unsecure and secure DYRS-operated and managed custodial-facilities.  At those times, Defendant through its DYRS officials and agents acted *in loco parentis*.

37. Brooks' contact and opportunity with Plaintiff derived from his position and status as a tutor under the dominion and supervision of Defendant District and Defendant Golden Diversity.

38. Brooks availed himself of Defendants' community reputations and representations that LOTS/BARJ was adequately staffed and safe, protective environment for high risk pre and post adjudicated female teens.

39. Relying on agency and authority, Brooks gained easy access and opportunity to successfully groom and coerce Ware to comply with his sexual demands, abuses, and pressure to maintain secrecy and avoid disclosure.

40. Brooks' buses took place during Brooks' work hours, off and on-site during LOTS/BARJ Drop-In-Center activities. Brook's grooming and sexual abuses was imposed carried out on Plaintiff's body in proximity or in clear view of all Defendant officials, employees, and agents.

8

41. Due to the aforementioned sexual relationship, evidence of concomitant behavioral and emotional ramifications of sexual abuse were visible and continued during Plaintiff's respective detentions at both custodial facilities.

42. While living in or detained at juvenile facilities, Plaintiff's daily routine, transportation, whereabouts, safety, and welfare were under the supervision, responsibility, and operational management of DYRS.

43. At relevant times. Defendant's aforementioned agencies sought and gained the trust and confidence of minor Plaintiff's father as Plaintiff entered and moved through the District's juvenile justice systems.

44. Prior to Ware's October 2016 arrest and at all pertinent times through September 2017, the District mandated training for all youth-service providers based in commissioned research, issued annual studies, established profiles of perpetrators, and distributed statistics on potential and actual sexual victimization and trafficking of D.C. pre-and post-adjudicated juveniles, with a focus on African-American teenage girls.

45. At all pertinent times Defendant agencies, its officials and juvenile justice professionals knew and/or should have known that: (a) sexual trafficking was on the rise nationwide and in the D.C;  (b) pre-and post-adjudicated youth remain at greater risk of sexual victimization and trafficking then other youth populations; (c) African-American teenage girls are and have been at highest risk of sexual victimization and trafficking in D.C.; and, (d) perpetrators of sexual victimization of minors often pursue and are hired in  jobs that focus on at-risk populations and provide easy access to vulnerable youths. Notwithstanding same, the district had a custom, pattern and practice of not properly protecting potential victims in its custody.

## COUNT ONE
## CHILD SEXUAL BATTERY & ABUSE-
## BY DEFENDANTS' EMPLOYEE AND AGENT BROOKS

46. Plaintiff incorporates all paragraphs of this Complaint as if fully set forth under this count and further alleges:

47. While acting in the course and scope of his employment and agency, from the time he was hired until termination, Anthony Brooks engaged in wrongful sexual language, grooming behaviors, and touching, to accomplish sexual abuse of then minor Plaintiff, on and off the premises of the District's LOTS/ BARJ Drop-In-Center Center, located in the District of Columbia.

48. On or about March 2017-September 20, 2017, Brooks intentionally touched Plaintiff on her person against her will and without legal consent.

49. Brooks battered Ware and engaged in willful and harmful sexual contact while touching her in intimate areas of her body in a harmful sexual manner and without legal consent.

50. In furtherance of committing willful and harmful sexual contact and abuse of then minor Plaintiff, Brooks relied on his job-created title, position, and authority to influence and successfully accomplish grooming, sexual abuse and eventual transporting then minor Plaintiff across District of Columbia and Maryland state lines.

51. As a direct and proximate result of Brooks' sexual abuse and battery, Plaintiff has suffered ongoing physical and emotional injuries including but not limited to chronic depression, anxiety, shame, post-traumatic stress disorder, loss of trust and lack of concentration.

**COUNT TWO**
**VICARIOUS LIABILITY**
**(Defendants Golden and District of Columbia)**

52. Plaintiff incorporates all paragraphs of this Complaint as if fully set forth under this count and further alleges:

53. At all material times, Brooks was under the direct supervision, employ, and control of Defendants District of Columbia and Golden.

54. Defendants granted Brooks' authority to act as their agent providing services at LOTS/BARJ.

55. In his capacity as employee and agent, Brooks had access and power to develop a grooming relationship leading up to the wrongful and harmful acts described herein on Plaintiff.

56. Defendants held Brooks out to the community as a safe and competent employee and agent. Such representation amounted to approval and ratification by Defendants Golden and the District. Further, Brooks' interaction with Plaintiff was in proximity and full view by Defendants' probation and case management workers.

57. Brooks was acting in part to serve the interests of his employer when he committed sexual misconduct and abuse.  Specifically, Brooks acting as an agent, used the status, power and authority that the position granted, to develop a relationship with the Plaintiff and gain the confidence and trust that enabled him to sexually groom and abuse her.

58. By using his power and authority the position conferred on him, Brooks purported to act and/or speak on behalf of Golden and the District when he committed the tortious acts herein. The Plaintiff trusted and relied on Brooks' employment-status and apparent authority.

59. Prior to October 2016 through September 2017 sexual abuse of pre-and post-adjudicated teenage girls with high-risk profiles for sexual exploitation and victimization was a foreseeable and known danger by youth workers in the District's juvenile and probation systems.

60. Based on Defendants' knowledge of Brooks' work history at BARJ and Plaintiff's well documented high-risk profile for sexual exploitation and victimization, the sexual misconduct and abuse of Plaintiff by Brooks was foreseeable.

61. Brooks conducted his tortious conduct during his employment and agency relationship with Defendants while actually or apparently providing supervision and tutoring to then minor Plaintiff.

62. Defendants Golden and the District are liable for the negligent wrongful conduct of Defendant Brooks under the law of vicarious liability, including the doctrine of *respondeat superior.*

### COUNT THREE
### NEGLIGENT HIRING, TRAINING SUPERVISION AND RETENTION
### BY DEFENDANTS DISTRICT OF COLUMBIA
### AND GOLDEN DIVERSITY

63. Plaintiff incorporates all paragraphs of this Complaint as if fully set forth under this count and further alleges:

64. At all pertinent times, Brooks was under direction, supervision, and control of Defendants Golden and District via FCSSD and their employees and agents.

65. At all pertinent times, Golden operated as a contractor and service delivery provider of the District of Columbia to provide tutorial services to pre- and post-adjudicated juveniles. Accordingly, Golden entered an express and/or implied duty with the District to hire, vet and

train personnel capable of and committed to tutoring in a professional, safe, and harm-free environment at the LOTS/BARJ.

66. By hiring and retaining Brooks as a tutor for vulnerable youth, Defendants Golden and the District represented to the public, Plaintiff, and her family, that Brooks was a safe, responsible, competent and a trustworthy employee and agent. Notwithstanding, on information and belief, prior to Plaintiff's arrest, Defendants knew this was not the case.

67. The District failed to employ an adequate screening, vetting, and training process when it approved and contracted with Golden as its service delivery contractors to hire and provide on-site tutors at District's BARJ Drop-In Centers.

68. Defendants negligently trained and supervised Brooks.  Once notified that Brooks exhibited predatory behaviors that posed a threat to Plaintiff, an in-coming pre- adjudicated juvenile at high risk for sexual victimization, Defendants failed to act timely and responsibly by terminating and removing Brooks. Further, Defendants failed to timely report the behaviors to D.C. law enforcement pursuant to D.C. Code **§** 4-1321.02.ß

69. As far back as October 2016, FCSSD employees and agents, observed and notified District and Golden officials and administrators, that Brooks exhibited on-going inappropriate and predatory behaviors toward pre-adjudicated female juvenile participants at the Q Street LOTS/BARJ. Notwithstanding, Defendants disregarded this disturbing information and retained Brooks as a tutor at the Q Street BARJ drop-in center.

70. Defendants' failure to adequately train and then terminate Brooks, knowing that he harmed youth, allowed him continued access to groom, seduce, and sexually abuse pre-adjudicated juveniles placed at the Q Street BARJ Drop-In Center.

13

71. Prevention is the most important tool available to any jurisdiction and state to fight sexual violence against children. Notwithstanding, Defendant District of Columbia initiated and mandated Plaintiff's participation in the Q Street LOTS/BARJ Center in March 2017, knowing that Brooks was a predator and still employed as a tutor at that location.

72. It was foreseeable that Brooks would continue to engage in inappropriate behaviors and sexual misconduct. It was further foreseeable given Ware's at-risk profile, that she'd be vulnerable and susceptible to sexual grooming and victimization because of Defendants' decision to assign Brooks, an already identified predator, as her one-on-one tutor.

73. The District was aware for more than a decade leading up to 2017, that human trafficking of minors in the District was on the rise. This was particularly the case with family, child, and youth-centered District agencies.

74. As far back as 2004, the District created the D.C. Human Trafficking Task Force and relied on studies that documented and identified African American females, prone to run away, missing for periods of time, abusing drugs and already sexually active as the population most at risk for sexual exploitation and trafficking.

75. At all pertinent times, the District was aware of increased pending and previously filed sexual misconduct-related complaints and lawsuits against the ranks of its officials, employees and agents providing services to District youth and in particular, African-American female juveniles.

76. In response to the rise in sex trafficking the District distributed Directives to Defendant District agencies serving pre- and post-adjudicated juvenile populations, as part of an agency-

wide educational and training campaign related to preventing sexual exploitation and identi-fying both victims and perpetrators.

77. Defendants knew or should have known that persons willing to sexually abuse, and traffic minors were inclined to seek and find employment with D.C. agencies that serve the high-risk vulnerable female population, to which minor Plaintiff was and remains a member.

78. It was foreseeable to Defendants that employees and agents with easy access, would seek out, groom, sexually exploit and abuse vulnerable pre- and post- adjudicated female juveniles.

79. Despite this knowledge, Defendants failed to exercise reasonable care to vet, train and super-vise Defendant Brooks, especially since he had already exhibited inappropriate behaviors.

80. As a direct result of Defendants' negligence, Plaintiff suffered harm and the injuries alleged herein.

81. Additionally, Defendant District's inadequate training of FCSSD and DYRS officials, em-ployees, and agents, Defendants Golden and Brooks, amounted to egregious and deliberate indifference to minor Plaintiff's body and rights rising to the level of a § 1983 violation set forth below.

**COUNT THREE**
**NEGLIGENCE/GROSS NEGLIGENCE**
**DEFENDANTS DISTRICT OF COLUMBIA**
**AND GOLDEN**

82. Plaintiff incorporates all paragraphs of this Complaint as if fully set forth under this count and further alleges:

83. At relevant times Ware remained in the Behavioral Diversion program under Defendant Dis-trict of Columbia's supervision, control, and jurisdiction. Additionally, at various times,

Plaintiff resided in DYRS-operated and managed custodial detention facilities including Youth Shelters and the secure detention facility.

84. At all pertinent times, as a condition of her probation and/or in compliance with the terms of her JBDP agreement, minor Plaintiff was court-ordered and mandated to attend and receive services at the LOTS Unit, housed at the Q Street BARJ Drop-In Center.

85. The District established BARJ Drop-In Centers in various locations city-wide, as a safe space and place for juveniles and their families to receive a variety of social services. The LOTS Unit was specifically and solely designed to promote health, leadership, and safety, for at-risk pre-and post-adjudicated teenage girl juveniles.

86. As far back as Plaintiff's arrest and initial intake on October 27, 2016, Defendant District had credible information and knew details of then minor Plaintiff's self-destructive and vulnerable behaviors placing her at high risk for sexual trafficking and victimization, in addition to running away from home. As a result of the behaviors, a complete Psychoeducational Evaluation of Plaintiff was ordered and performed by District's Family Court's Child Guidance Clinic in November 2016.

87. The findings of the clinical assessment included numerous Diagnostic Statistical Manual (DSM-5) diagnoses, all documented in the Report, dated 12/6/16. Those diagnoses in addition to Plaintiff's medical history influenced the psychologist's recommendations. Specific language included, "a follow-up assessment such as the Sex Trafficking Assessment Review (STAR) is highly recommended to determine Jeniyah's risk for sexual exploitation/victimization." This report was provided, accessible and available to all Defendants,

their officials employees, and agents responsible for and involved with Plaintiff's conditions of release, probationary JBDP, custodial detention welfare and status, and delivery of all pending social services.

88. As far back as, 2016, on-site Q Street BARJ Drop-In-Center, CSSD employees not only observed Brooks, in his capacity as tutor, display inappropriate predatory-like behaviors toward LOTS/BARJ participants, but reported their observations and concerns orally and in writing to Defendants officials, supervisors and administrators. Defendants did nothing to immediately address and curtail Brooks' documented behaviors.

89. Despite knowing that Brooks exhibited predator-like behavior making him unfit to serve and continue as a tutor for vulnerable at-risk female juveniles, Defendants Golden and the District retained him as an employee agent in the LOTS Unit thereby sanctioning his behavior.

90. Defendants entered an express and/or implied duty to provide a reasonable safe environment for Ware and assumed the duty to protect and care for her when mandating the terms of her ongoing Diversion program status, as well as periodic conditions of release.

91. Despite having knowledge of both Brooks' behavioral history and Plaintiff's fragile profile and clinical diagnoses, Defendants failed to take even a scintilla of reasonable security precautions.  Defendants not only selected and placed Jeniyah Ware at the Q Street LOTS/BARJ site, but deliberately assigned Brooks as her tutor, creating opportunity and place for the resulting harmful relationship that overtime increased Plaintiff's exposure as a minor to repeated grooming and sexual abuse.

92. Defendants held Brooks out as a safe, competent, and trustworthy tutor to the public, Plaintiff, and her family. Defendants had the knowledge, position, and power to prevent the inter-

action between Plaintiff and Brooks. instead, Defendant's failure to warn and poor decision-making made the meeting and connection inevitable.

93. Prior to and during participation at LOTS/BARJ, Plaintiff was prone to run away and went missing for periods of times. Due to abscondences, at periodic and relevant times Plaintiff was ordered detained at unsecure and secure DC juvenile custodial facilities managed and controlled by DYRS.

94. While residing in DYRS' juvenile custodial facilities, contacts between Plaintiff and Defendant District's agencies increased, enhancing the already-created special relationship and the duty owed minor Plaintiff by Defendant District of Columbia.

95. Once Plaintiff was detained in youth shelters, DYRS officials and employees had access to all juvenile-related documents generated about minor Plaintiff's background, fragile profile, and diagnoses.

96. While in their custody, DYRS was responsible for case management and supervising Plaintiff's daily routines, time management and before and after school activities, including her participation in LOTS.

97. As the sole administrators of juvenile probation services and detention facilities, FCSSD and DYRS, respectively had express and/or implied duties to protect and care for Ware, once under the District's jurisdiction.

98. On the heels of repeated absences, Plaintiff's secure and unsecure DYRS detention placements increased  the proximity between minor Plaintiff and Defendants' duty for one-on-one interaction and opportunities for them to observe her daily physical and emotional status, including indicators of sexual abuse, exploitation, and victimization.

18

99. While in the custody of DYRS, Defendant was responsible for tracking and monitoring minor Plaintiff's whereabouts, to secure and ensure her health and safety.

100.   Ware's well documented abscondences, emotional and familial history and at-risk behaviors made it imperative that Defendant's agents aggressively investigate, ask questions, and observe for possible sex exploitation indicators as part of their duty to keep Plaintiff safe and out of harms-way.

101.   District agencies recklessly chose to continue placing and transporting Plaintiff to what was known or should have been known as an unsafe environment at LOTS/BARJ, increasing rather than reducing preventable harm.

102.   Defendants jointly and severally negligently and/or intentionally acted in a manner that jeopardized Plaintiff's safety, welfare, and security thereby  placing her at risk, resulting in foreseeable and preventable injuries set forth herein.

103.   Defendant's actions, as described herein, were objectively unreasonable considering the facts and circumstances confronting her and violated her Fourth Amendment rights.

104.   Defendant FCSSD and DYRS officials, employees and agents acted with willful and deliberate indifference and disregard to the Plaintiff's federally protected rights as described herein, when they decided minor Plaintiff would remain placed at the LOTS/BARJ.

105.   The acts or omissions of all Defendants were moving forces behind Plaintiff's injuries.

106.   District agencies and officials acted in concert and joint action with each other.

107.   The acts or omissions of Defendants as described herein intentionally deprived Plaintiff of her constitutional rights and caused her other damages.

108.  Defendants to this claim always relevant hereto were acting pursuant to District of Columbia custom, policy, decision, ordinance, regulation, widespread habit, usage, or practice in their actions pertaining to minor Plaintiff.

109.  As a proximate result of Defendants' conduct, Plaintiff has suffered actual physical and emotional injuries, and other damages and losses as described herein entitling her to compensatory and special damages.

### COUNT FOUR
### FIFTH And FOURTEENTH AMENDMENT VIOLATIONS
### PURSUANT TO TITLE 42 U.S.C.  §1983
### (State-Created Danger and Deliberate Indifference
### Defendant District of Columbia)

110.  Plaintiff incorporate all paragraphs of this Complaint as if fully set forth under this count and further alleges:

111.  42 U.S.C. § 1983 provides that:

Every person, who under color of any statute, ordinance, regulation, custom or usage of any state or territory or the District of Columbia subjects or causes to be subjected any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges or immunities secured by the constitution and law shall be liable to the party injured in an action at law, suit in equity, or other appropriate proceeding for redress…

112.  Plaintiff is a citizen of the United States, and the Defendant District of Columbia's officials, employees and agents are persons for purposes of 42 U.S.C. § 1983.

113.  At all times relevant to this complaint, Defendant District through officials, employees, and agents acted under color of state law customs and usages within the meaning of 42 U.S.C. § 1983.  Further, Defendant's actions demonstrate a high level policies, practices, and

customs that resulted in injury to Plaintiff either by commission or by sanctioning of known governmental misconduct.

114.   Knowledge and special responsibility are heightened for FCSSD and DYRS employees and agents given the fact that these officials' and agents are as a matter of law, agency customs, practices and policies, the designated guardians and protectors of the District's pre and post-adjudicated youth in the juvenile justice system.

115.   Plaintiff enjoyed an established constitutional right under the Fifth and Fourteenth Amendments of the U.S. Constitution to be free from state-created bodily harm due to District's affirmative actions that both created a dangerous situation and actions that then repeatedly rendered Plaintiff more vulnerable to the state-created danger.

116.   Despite notice and knowledge of Brooks' predatory behavior Defendant's agents failed to comply with D.C. mandatory reporting obligations of sexual abuse to D.C. law enforcement. In so doing, the District demonstrated reckless indifference to the risk that such activity was foreseeable and could result in constitutional violations against Plaintiff's bodily integrity.

117.   When crafting Plaintiff's conditions of probation and diversion requirements, Defendant had access to a continuum of after-school, social service wellness-related programs and site locations to satisfy Plaintiff's needs. Notwithstanding this, District agents used their authority and affirmatively selected the LOTS/BARJ Q Street as Plaintiff's assigned Drop-In-Center, placing Ware in harms-way and creating a dangerous situation that had not previously existed.

118.    Defendant recklessly disregarded the tutor's behavior, Ware's well documented high-risk

for sexual victimization and trafficking and further exacerbated the already-created danger by

permitting, endorsing and/or ignoring Brooks' assignment as Ware's one-on-one tutor.

119.    Plaintiff's mental health was compromised to the extent that she came under the jurisdic-

tion of the D.C. Family Behavior and Health Court due to a heightened need for up close and

in-person case management of her whereabouts and behaviors.

120.    Plaintiff's required attendance at LOTS/BARJ existed contemporaneously with periodic

court-ordered detentions at unsecure DYRS community-based shelter homes. A special rela-

tionship and duty of care was created with Defendant LCSSD and DYRS agents and said re-

lationship continued while Plaintiff's identified mental health status deemed her eligible and

under the jurisdiction by the District's Behavior and Health Court.  Basic case management

was heightened requiring Defendant to maintain increased and ongoing monitoring of Plain-

tiff.

121.    With prior knowledge of Plaintiff's extreme vulnerable profile and Brooks' predator his-

tory, once Plaintiff was required to attend LOTS/BARJ, Defendant then affirmatively as-

signed, supported, and allowed Brooks to serve as Plaintiff's one-on-one tutor with daily ac-

cess and ongoing personal contact that rendered Plaintiff more vulnerable to the danger De-

fendant had already create in its placement decision.

122.    DYRS agents obligated to act *in loco parentis* repeatedly failed in a big way to simply

observe Plaintiff, track her daily activities and whereabouts, or monitor her behavior.  DYRS

supported her continued participation in LOTS/BARJ as conditions of her Diversion pro-

gram, extending Ware's exposure to Brooks and an unnecessarily created dangerous environment.

123.  Defendant acted with reckless disregard for Plaintiff. Given the facts, circumstances and what was at risk, Defendant's conduct was so outrageous

124.  Plaintiff would not have been in harm's way at the hands of Defendant Brooks, but for the deliberate and affirmative decisions acted on by Defendant's Agencies and, its mere failure to follow its own directives and policies.

**COUNT FIVE**
**FIFTH AND FOURTEENTH AMENDMENT VIOLATIONS**
**PURSUANT TO TITLE 42 U.S.C. §1983**
**(Harm Caused Due to Public Policy and Custom Considerations)**
**(Defendant, District of Columbia)**

125.  Plaintiff incorporates all paragraphs of this Complaint as if fully set forth under this count and further alleges:

126.  Defendant developed and maintained policies, procedures, customs and/or practices exhibiting deliberate indifference which were the forces behind and proximately caused the violations of then minor Plaintiff's constitutional claims herein.

127.  At pertinent times, DYRS officials, employees and agents monitored and/or transported minor Plaintiff to the LOTS/BARJ Drop-In Center, located 118 Q Street, NE, DC, where Defendant Brooks worked and was known to engage in predatory behavior.  The unsafe contact intensified while Plaintiff was detained and in the custody of DYRS due to limitation of choices and movement.

128.  Despite the District's department-wide administrative issuances and directives mandating youth and juvenile-related agencies, educate and train officials, employees, and agents on

how to detect, identify and appropriately respond to sexual exploitation and victimization, in part due to frequency of perpetrators targeting these vulnerable populations, Defendant ignored the facts and its own directives. Defendant maintained a failed policy, custom and practice to properly train and supervise employees and its agents resulting in the infliction of an injury and amounting to deliberate indifference toward Ware's right to be free from state-created and imposed danger.

129.     Based on Plaintiff's right to be free from state-created dangers directly placing her in harms-way, as indicated above, Defendant's constitutional liability pursuant to 42 U.S.C §1983 arises from the following:  Defendant's failure to comply with its duty of care based on its special relationship with Jeniyah Ware; Defendant's routine failure to implement custom, policy and practices, resulting in an infliction of injury to the Plaintiff; and, Defendant's affirmative decisions and actions that unnecessarily placed then minor Plaintiff in an unsafe place and then went further by unconscionably subjecting Plaintiff to a subordinate relationship with a known predator adult agent, rendered Plaintiff more vulnerable to the initial danger created causing egregious injury

## COUNT SIX
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

130.     Plaintiff incorporates all paragraphs of this Complaint as if fully set forth under this count and further alleges:

131.     As a direct and proximate result of Defendants' agent and employee Brooks' aforesaid extreme and outrageous intentional conduct.  As a result, Plaintiff suffered severe injury, distress, physical and emotional trauma, low self-esteem, and mental anguish among other harmful long-term injuries.

132.   Defendants deliberately disregarded and/or ignored the degree of probability that severe emotional and physical distress would result from Brooks' known sexual misconduct; the creation of an unsafe environment; and placement of Plaintiff in that specific unsafe environment, allowed for the place, opportunity, and continuation of these preventable and foreseeable harmful acts on Jeniyah Ware.

133.   As a direct and proximate result of Defendants' disregard and reckless conduct, Plaintiff, has suffered, is suffering and in the future will continue to suffer severe emotional distress, physical injury, pain and suffering, psychological trauma, mental anguish, humiliation, embarrassment, loss of self-esteem, loss of dignity and other damages associated with Defendants actions. These injuries are permanent in nature and Jeniyah Ware will continue to suffer these losses in the future.

## PRAYER FOR RELIEF

134.   As a further result of the Defendants' unlawful conduct, Plaintiff has incurred special damages, including emotional and medically related expenses and will continue to incur these and other special damages related expenses. The Plaintiff is therefore entitled to money damages pursuant to 42 U.S.C. § 1983 to compensate for her injuries and for the violation of her Constitutional and civil rights.

135.   Plaintiff is further entitled to attorneys' fees and costs pursuant to 42 U.S.C. §1988, prejudgment interest and costs as allowable by federal law.

136.   In addition to compensatory, economic, consequential, and special damages, Plaintiff is entitled to punitive damages against each of the District employees in their official capacity

under 42 U.S.C. § 1983, in that the actions of each have been taken maliciously, willfully or with a reckless or wanton disregard of the constitutional rights of Plaintiff.

WHEREFORE, Plaintiff seeks judgment against the District of Columbia and Golden Diversity jointly and severally and requests this Court to award:

(a)     Compensatory damages to Plaintiff in the amount in an amount in excess of $2,500,000.00

in compensatory damages for harmful injuries including ongoing emotional pain, suffering, inconvenience, mental anguish, and humiliation.

(b)      Attorney's fees, costs and expenses incurred pursuant to 42 U.S.C. § 1988; and,

(c)     Such further relief as this Honorable Court deems just and fair.

## JURY TRIAL DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Respectfully submitted,

*/s/ Donald M. Temple*
Donald M. Temple, Esq.
1310 L Street, N.W., Suite 750
Washington, D.C. 20005
Tel: (202) 628-1101
Fax : (202) 628-1149
Email : dtemplelaw@gmail.com

26

27