## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

**JENIYAH WARE**,

Plaintiff,

v.

**DISTRICT OF COLUMBIA, et al.**,

Defendants.

Case No. 1:21-cv-02895 (TNM)

## MEMORANDUM OPINION

Jeniyah Ware sues the District of Columbia and a company called Golden Diversity, Inc. (Golden).  *See* Compl., ECF No. 1.  She alleges that the District hired Golden to provide "tutoring services" to juveniles who, like Ware, had cases pending in the District's juvenile justice system.  *Id.* ¶ 25.  And she says that a Golden employee sexually abused her during her time in a juvenile facility.  *See id.* ¶ 40.  Based on this, she raises several claims against Golden and the District, including sexual battery of a child, negligence, negligent hiring, and intentional infliction of emotional distress.  She also claims that the District violated her civil rights under 42 U.S.C. § 1983.

Golden did not respond, so the Clerk entered a default against it.  *See* ECF No. 9.  Ware moved for default judgment against Golden.  *See* Pl.'s Mot. for Default J. (Pl.'s Mot.), ECF No. 21; *see also* ECF No. 17.  The District moved to dismiss all claims against it.  *See* Def.'s Mot. to Dismiss (Def.'s Mot.), ECF No. 11.  Because Ware fails to state a claim against both Defendants, the Court will deny her motion for default judgment and grant in part the District's motion to dismiss.  The motion to dismiss will be denied insofar as the dismissal is without prejudice.

**I.**

In October 2016, Jeniyah Ware was 13 years old when police arrested her on a misdemeanor charge of unlawful entry.  Compl. ¶¶ 1, 14.  She then "was in a pre-adjudicated juvenile probation status under the management and control of Family Court Social Services Division" (FCSSD).  *Id.* ¶ 1.  FCSSD is the sole probation agency for pre-adjudicated juveniles advising and serving the District's Family Court Operations Division.  *Id.* ¶ 3.  Periodically, Ware resided in court-ordered Youth Shelter Homes or the District's Youth Center.  *Id.* ¶ 1.  The District's Youth and Rehabilitation Services operated and supervised these placements.  *Id.*  At other times, Ware lived with her father.  *Id.*

The District later certified Ware's case to the Juvenile Behavioral Diversion Program for an eligibility determination.  *Id.* ¶ 21.  As a condition of her pretrial release, the District ordered Ware to attend a Balance and Restorative Justice Drop-In Center and to participate in the Leadership of Today in Solidarity program.  *Id.*  At these programs, juveniles on probation receive various services, including tutoring.  *Id.* ¶ 9.  FCSSD officials and employees manage, operate, and staff these programs.  *Id.* ¶ 22.

Golden was a contractor that provided tutoring services to juveniles under a Statement of Work with FCSSD.  *Id.* ¶ 6–7.  According to Ware, the District "mandated training for all youth-service providers based on commissioned research, issued annual studies, established profiles of perpetrators, and distributed statistics on potential and actual sexual victimization and trafficking of D.C. pre- and post-adjudicated juveniles, with a focus on African-American teenage girls."  *Id.* ¶ 44.

Golden hired Anthony Brooks and assigned him to be Ware's tutor.  *Id.* ¶¶ 9, 27, 34.  Ware alleges that from March through September 2017, Brooks sexually abused her.  *Id.* ¶ 35.  On September 20, 2017, the Metropolitan Police Department (MPD) arrested Brooks.  *See* Arrest

Report, ECF No. 15-2.  The day before his arrest, Ware told MPD that Brooks "was her mentor while she attended a court ordered program but when she changed programs the mentoring should have stopped," and that Brooks had picked her up from her father's home and drove her to his home in Maryland, before sexually assaulting her.  *See id.*  Brooks later pled guilty to transporting minors for sexual activity.  Compl. ¶¶ 11, 35.

Ware alleges that, in October 2016, probation officer Stephanie Lea notified both FCSSD and Golden that she observed Brooks "exhibit inappropriate and predatory-like behaviors toward female juvenile participants[.]"  *Id.* ¶ 29.  Ware also alleges that another probation officer, Denise Tennant-Bryan, "reported on-site inappropriate behaviors" by Brooks in 2016.  *Id.* ¶ 30.  And she claims that both FCSSD and Golden "failed to fulfill mandatory reporting obligations and to terminate and remove Brooks" despite knowledge of his "predatory-like behaviors."  *Id.* ¶ 31.

In March 2018, about six months after MPD arrested Brooks, Ware's father sent a letter to the Mayor and the District's Office of Risk Management notifying the District of Ware's claims.  *See* Notice Letter, ECF No. 15-1.  This suit followed.

## II.

To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain sufficient factual allegations that, if true, "state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim is facially plausible when the facts "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  And courts must accept plaintiffs' factual allegations as true and grant in their favor "all inferences that can be derived from the facts alleged."  *L. Xia v. Tillerson*, 865 F.3d 643, 649 (D.C. Cir. 2017) (cleaned up).

Yet courts need not credit "a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (cleaned up).  Courts consider "only the facts alleged in the complaint, any documents either attached to or incorporated in the complaint[,] and matters of which [it] may take judicial notice." *Hurd v. District of Columbia*, 864 F.3d 671, 678 (D.C. Cir. 2017).

## III.

Consider first Ware's sole federal claim.  Ware alleges that the District violated her Fifth and Fourteenth Amendment rights to be free from state-created bodily harm and is thus liable under 42 U.S.C. § 1983.  The District counters that Ware fails to plausibly allege a predicate constitutional violation or that District policy or custom caused her alleged injuries.  Def's Mot. 9–18.  The Court agrees with the District on both scores.

Section 1983 allows Ware to sue the District for some constitutional violations.  But "Congress did not intend municipalities to be held liable unless action pursuant to official municipal policy of some nature caused a constitutional tort." *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 691 (1978).  The Court thus conducts a two-step inquiry.  *See Baker v. District of Columbia*, 326 F.3d 1302, 1306 (D.C. Cir. 2003).  First, there must be a predicate constitutional violation.  *Id.*  Second, a District custom or policy must have been the "affirmative link" to that constitutional violation, "such that [it] was the moving force behind the constitutional violation." *Id.* (cleaned up).  Ware stumbles at both steps.

## A.

The Court first considers whether Ware has shown a predicate constitutional violation. She alleges that the District failed to adequately protect her from Brooks's predatory behavior in

4

violation of the Fifth Amendment.[1]  The Fifth Amendment protects citizens from being

"deprived of life, liberty, or property, without due process of law."  U.S. Const. amend. V.[2]  The

Court finds that Ware has not plausibly alleged a violation of her due process rights.

Ware claims that she had a "constitutional right . . . to be free from state-created bodily

harm."  Compl. ¶ 115.  In other words, she invokes her substantive due process right to bodily

integrity.  *See Roe v. Wilson*, 365 F. Supp. 3d 71, 79 (D.D.C. 2019) (recognizing sexual assault

by a schoolteacher can violate a student's substantive due process right to bodily integrity).

Substantive due process challenges present a threshold question: "whether the behavior of the

government officer is so egregious, so outrageous, that it may fairly be said to shock the

contemporary conscience."  *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 847 n.8 (1998).  As the

Supreme Court has emphasized, the due process clause "does not transform every tort committed

by a state actor into a constitutional violation."  *DeShaney v. Winnebago Cnty. Dep't of Social

Servs.*, 489 U.S. 189, 202 (1989).  Ordinarily, a plaintiff shows conscience-shocking behavior by

showing either (1) "a substantial infringement of state law prompted by personal or group

animus" or (2) "a deliberate flouting of the law that trammels significant personal or property

rights."  *Tri Cnty. Indus., Inc. v. District of Columbia*, 104 F.3d 455, 459 (D.C. Cir. 1997).

But Ware argues that a lower standard should apply here:  she asserts that the District is

liable for its alleged deliberate indifference to her safety.  Opp'n 5–7.  To do so, Ware invokes a

state-endangerment theory, under which "an individual can assert a substantive due process right

---

[1]  Ware also alleges that the District violated her due process rights under the Fourteenth
Amendment, but she does not contest the District's claim that the Fourteenth Amendment is
inapplicable to it.  Opp'n 12.  Thus, the Court will dismiss Ware's Fourteenth Amendment claim
as conceded.
[2]  The Fifth Amendment applies to the District of Columbia.  *See Bolling v. Sharpe*, 347 U.S.
497, 499 (1954).

to protection by the District of Columbia from third-party violence when District of Columbia officials affirmatively act to increase or create the danger that ultimately results in the individual's harm." *Butera v. District of Columbia*, 235 F.3d 637, 651 (D.C. Cir. 2001). She claims that the District is liable under the deliberate indifference standard because it "affirmatively assigned, supported, and allowed Brooks to serve as [Ware's] one-on-one tutor." Compl. ¶ 121.

Alternatively, Ware alleges that the deliberate indifference standard applies here because the District had a heightened obligation to her, stemming from her court-ordered participation in the diversion program. If so, a "lower threshold for meeting the shock the conscience test by showing deliberately indifferent as opposed to intentional conduct applies." *Est. of Phillips v. District of Columbia*, 455 F.3d 397, 403 (D.C. Cir. 2006). The District counters that it had no such obligation because Ware was pre-adjudicated and on probation, and thus the District never committed her to its custody. Def.'s Mot. 11–12.

This Court need not decide whether the District had a special obligation to protect Ware. Assuming without deciding that the District had a "heightened responsibility toward [Ware]" so that the lower deliberate indifference standard applies to its conduct, *Butera*, 235 F.3d at 651, Ware still fails to state a plausible substantive due process claim. "Deliberate indifference must still be conscience-shocking." *Est. of Philips*, 455 F.3d at 403. This high standard is "something more than negligence but less than intentional conduct, such as recklessness or gross negligence." *Butera*, 235 F.3d at 651.

Ware alleges that "[t]he District failed to employ an adequate screening, vetting, and training process when it approved and contracted with Golden as its service delivery contractors to hire and provide on-site tutors[.]" Compl. ¶ 67. Yet her own allegations belie this contention:

she alleges that the District has "*mandated* training for all youth-service providers based in commissioned research, issued annual studies, established profiles of perpetrators, and distributed statistics on potential and actual sexual victimization and trafficking of D.C. pre-and-post-adjudicated juveniles, with a focus on African-American teenage girls." Compl. ¶ 44 (emphasis added). The District requires the companies it hires, like Golden, to conduct criminal background checks. D.C. Code §§ 4-1501.01 *et seq.* And there is no allegation that FCSSD or Golden violated these background check requirements. More, the District has also promulgated regulations governing private entities' responsibilities to investigate potential employees. *See* D.C. Mun. Regs. Tit. 27, §§ 500 *et seq.* So the District's screening and vetting was not constitutionally inadequate. *Cf. Smith v. District of Columbia*, 413 F.3d 86, 98–99 (D.C. Cir. 2005) (jury could find that District was deliberately indifferent where District "had no criteria for selecting or monitoring [service] providers" as required by District law).

Ware also argues the District was deliberately indifferent by ignoring its mandatory reporting obligations despite notice of Brooks's predatory behavior.[3] *See* Compl. ¶¶ 29–31, 116. She alleges a probation officer in 2016 notified FCSSD and Golden in a letter that she observed Brooks "exhibit inappropriate and predatory-like behaviors towards female juvenile participants." *Id.* ¶ 29. This is not accurate. The 2016 letter does not mention Brooks by name and does not document any instance of prior sexual misconduct.[4] *See* ECF No. 11-1.

---

[3] Even if this were true, this allegation fails to support Ware's state-endangerment theory because it concerns the District's alleged failure to act, not an affirmative act of the District. *See Butera*, 235 F.3d at 650 ("No constitutional liability exists where the State actors had no hand in creating a danger but simply stood by and did nothing when suspicious circumstances dictated a more active role for them." (cleaned up)).

[4] The Court may consider the letter attached to the District's motion because Ware's Complaint incorporates it by reference. *See* Compl. ¶ 29; *Ward v. D.C. Dep't of Youth Rehab. Servs.*, 768 F. Supp. 2d 117, 119 (D.D.C. 2011) (cleaned up) (noting court may consider "documents upon

Ware also claims that the District was deliberately indifferent because, in 2016, another probation officer "reported on-site inappropriate behaviors by Another Brooks" to unspecified individuals.  Compl. ¶ 30.  Without more, this vague allegation fails to state a claim of conscience-shocking deliberate indifference.  Ware does not identify the purportedly inappropriate behaviors that the officer reported nor to whom the reports were made.  Thus, it's unclear whether those who received the report had any role in "crafting [Ware's] conditions of probation and diversion requirements."  *Id.* ¶ 117.  Because Ware fails to allege conscious-shocking deliberate indifference, she fails to state a plausible predicate constitutional violation against the District.  *See Est. of Philips*, 455 F.3d at 403.

### B.

Even if Ware had shown a predicate constitutional violation, her claim still fails under *Monell*:  she identifies no District custom, policy, or practice that acted as the "affirmative link" to any harm Brooks inflicted.  *Baker*, 326 F.3d at 1306.

Ware could meet this standard by alleging facts that tick any one of four boxes:

(1) "the explicit setting of a policy by the government that violates the Constitution";

(2) "the action of a policy maker within the government";

(3) "the adoption through a knowing failure to act by a policy maker of actions by his subordinates that are so consistent that they have become 'custom'";

(4) "or the failure of the government to respond to a need . . . in such a manner as to show 'deliberate indifference' to the risk that not addressing the need will result in constitutional violations."

---

which the plaintiff's complaint necessarily relies even if the document is produced not by plaintiff in the complaint but by the defendant in a motion to dismiss").

*Id.*  But Ware does not.  Thus, the Court holds that Ware has not plausibly alleged that her harm resulted from a municipal policy or custom.

First, Ware points to no "explicit setting of a policy by the government that violates the Constitution."  *Id*.  Second, she does not assert that any final District policymaker acted to cause her injuries (nor does she fault any particular District official).  *Id.*  Third, Ware does not plausibly allege any actions "so consistent that they have become 'custom.'"  *Id.*  Indeed, she has not pointed to anyone else who suffered similar harm, nor has she showed that the alleged unconstitutional actions were widespread or pervasive.  *See DuBerry v. District of Columbia*, 582 F. Supp. 2d 27, 39 (D.D.C. 2008) (finding insufficient evidence of widespread custom, practice, or policy where plaintiff failed to "produce[] any evidence that the Department's alleged discriminatory employment practices impacted a single employee or prospective employee other than himself").

Ware's primary argument is that the District is liable under a theory of deliberate indifference.  Ware alleges the District failed "to respond to a need . . . in such a manner as to show 'deliberate indifference' to the risk that not addressing the need will result in constitutional violations."  *Baker*, 326 F.3d at 1306; Opp'n 5–7.  The deliberate indifference standard for establishing municipal liability is "distinct" from the standard used to show a predicate constitutional violation.  *Harvey v. District of Columbia*, 798 F.3d 1042, 1053 (D.C. Cir. 2015).

This standard is objective, "determined by analyzing whether the municipality knew or should have known of the risk of constitutional violations, but did not act."  *Jones v. Horne*, 634 F.3d 588, 601 (D.C. Cir. 2011) (cleaned up).  And it is stringent: "Only if a municipal policy was 'so likely to result in the violation of constitutional rights,' and the need to change the policy 'so obvious,' could 'policymakers of the city . . . have been deliberately indifferent to the need.'"

*Harvey*, 798 F.3d at 1053 (quoting *City of Canton v. Harris*, 489 U.S. 378, 390 (1989)).  A "lesser standard of fault would result in de facto respondeat superior liability on municipalities— a result [the Supreme Court] rejected in *Monell*."  *City of Canton*, 489 U.S. at 392.

Ware argues that "high level . . . managers were apprised of Brooks' behavior by probation officers, which establishes their deliberate ignoring of the risk that effectively caused foreseeable harm to [Ware]."  Opp'n 5–6.  But recall that the probation officers' allegations— made to unspecified individuals—do not document any instance of prior sexual misconduct, *see* Compl. ¶ 30, and the memorandum does not mention Brooks by name, *see* ECF No. 11-1.  And even if it did, Ware has not plausibly alleged that the District, the Mayor, the Council, or anyone with final policymaking authority knew or should have known that her constitutional rights were being violated.  *See Byrd v. District of Columbia*, 807 F. Supp. 2d 37, 75 (D.D.C. 2011) ("Absent identification of a member of [the Department's] management staff who is deemed to be a final policymaker under D.C. law, the Court cannot find that [the Department's] actions demonstrated deliberate indifference to plaintiffs' rights[.]").

Ware's inability to point to any unconstitutional acts other than those allegedly committed by Brooks also explains why Ware has not plausibly alleged municipal liability. Generally, "proof of a single incident of unconstitutional activity is not sufficient to impose" municipal liability, and "simply citing to plaintiff's own experiences does not demonstrate that a plaintiff was the victim of a policy or custom that caused them to suffer."  *Sledge v. District of Columbia*, 63 F. Supp. 3d 1, 28 (D.D.C. 2014) (cleaned up).  In fact, "in nearly all situations plaintiffs must demonstrate a pattern of injuries in order to establish municipal culpability" because there can be "'no notice to the municipal decisionmaker, based on previous violations of federally protected rights, that his approach is inadequate.'"  *Hamilton v. District of Columbia*,

852 F. Supp. 2d 139, 151 (D.D.C. 2012) (quoting *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 408 (1997)).

At bottom, Ware has failed plausibly to allege a predicate constitutional violation, or that the District has "adopt[ed] a policy of inaction" while on notice of a pattern of constitutional violations of the kind she alleges. *Warren v. District of Columbia*, 353 F.3d 36, 39 (D.C. Cir. 2004). Ware has thus failed to state a claim against the District under § 1983.

## IV.

Ware also brings five common law claims against the District. The District argues that Ware violated the District's statutory notice requirement and, in the alternative, fails to state a claim as to each of the common law actions. The District is correct.

## A.

To bring a tort action against the District for unliquidated damages, Ware must satisfy the mandatory notice requirement of D.C. Code § 12-309. *See Blocker-Burnette v. District of Columbia*, 730 F. Supp. 2d 200, 203 (D.D.C. 2010). Section 12-309 provides:

> An action may not be maintained against the District of Columbia for unliquidated damages to person or property unless, within six months after the injury or damage was sustained, the claimant, his agent, or attorney has given notice in writing to the Mayor of the District of Columbia of the approximate time, place, cause, and circumstances of the injury or damage. A report in writing by the Metropolitan Police Department, in regular course of duty, is a sufficient notice under this section.

Courts must construe § 12-309 "narrowly" "because it is in derogation of the common law principle of sovereign immunity." *Gross v. District of Columbia*, 734 A.2d 1077, 1081 (D.C. 1999) (cleaned up). And "[u]nless [Ware] demonstrates compliance with the requirements of § 12-309," her suit against the District must be dismissed. *District of Columbia v. Arnold & Porter*, 756 A.2d 427, 436 (D.C. 2000) (cleaned up).

Ware says she complied with the requirement in two ways.  First, her father, acting on her behalf, sent a Notice Letter under § 12-309.  *See* ECF No. 15-1.  And second, that the Arrest Report filed after Brooks's arrest sufficiently notified the District. *See* ECF No. 15-2.  The Court finds that neither the letter nor Arrest Report satisfies the requirements of § 12-309.

### 1.

Starting with the Notice Letter, Ware's father wrote to the Mayor's Office describing the cause of Ware's injuries and the circumstances under which Brooks allegedly assaulted her.  *See* ECF No. 15-1.  The District responds that this letter did not comply with the time limit set out in § 12-309.  Reply 7-8.  The District has it right.

Section 12-309 limits the District's waiver of immunity to cases in which the plaintiff provides notice to the Mayor "'within six months after the injury or damage was sustained.'"  *District of Columbia v. Dunmore*, 662 A.2d 1356, 1359 (D.C. 1995) (quoting D.C. Code § 12-309).  And "the six-month clock begins to run 'from the moment the plaintiff sustains the injury, not from the moment the cause of action accrues.'"  *Id.* (citations omitted).  Ware sent the Notice Letter on March 19, 2018.  *See* ECF No. 15-1.  The question then is whether Ware's injuries occurred before September 18, 2017.

Based on Ware's allegations, the Court finds that Ware's injuries began well before September 18, 2017.  Ware alleges that "from March 15, 2017 through September 20, 2017, [Brooks] caused certain personal, sexual and other harmful contact and abuse upon [Ware]."  Compl. ¶ 35.  In other words, Ware alleges that her injuries were

sustained beginning in March 2017—more than a year before she notified the District of her claims.

More, Ware relies on Brooks's Arrest Report, which, in her words, is "extensive in nature regarding time, date, circumstances, and harms caused to [Ware]."  Opp'n 7.  And the Arrest Report reveals that Ware's injuries "occurred between mid-July and the end of August 2017."  *See* ECF No. 15-2.  So Ware's own evidence confirms that even her most recent injury was sustained more than six months before she notified the District.

The D.C. Court of Appeals has cautioned that "strict observance of the statute's six-month time limit is essential."  *Dunmore*, 662 A.2d at 1360; *see also Brown v. District of Columbia*, 853 A.2d 733, 740 (D.C. 2004) (dismissing claim against District when plaintiff provided notice one day late).  And the District "does not recognize or permit an equitable tolling exception to the six-month notification limit" despite the "hardships to prospective litigants who have not reached the age of majority before the time within which notice of their respective claims must be given."  *Doe v. District of Columbia*, 697 A.2d 23, 29, 31 (D.C. 1997) (cleaned up).  Thus, the Notice Letter is untimely and fails to satisfy the requirements of § 12-309.

## 2.

Next, consider the Arrest Report, which Ware also contends sufficiently notified the District of her claims.  Opp'n 7–8.  Not so.  Under § 12-309, "[a] report in writing by the Metropolitan Police Department, in regular course of duty, is a sufficient notice under this section."  D.C. Code § 12-309(a).  But the mere "existence of a police report does not necessarily mean that the District has received the type of actual notice which § 12-309

contemplates." *Allen v. District of Columbia*, 522 A.2d 1259, 1262 (D.C. 1987).  Instead, a police report provides "sufficient notice" only where it "contain[s] information as to time, place, cause and circumstances of injury or damage with at least the same degree of specificity required of a written notice." *Washington v. District of Columbia*, 429 A.2d 1362, 1366 (D.C. 1981) (en banc); *accord Harris v. Bowser,* 404 F. Supp. 3d 190, 199 (D.D.C. 2019), *aff'd,* 843 F. App'x 328 (D.C. Cir. 2021).  That means it must "disclose both the factual cause of the injury and a reasonable basis for anticipating legal action as a consequence." *Washington,* 429 A.2d at 1366.

Even accepting that the Arrest Report adequately recites the time, place, cause, and circumstances of Ware's injuries, "it fail[s] to disclose or suggest any basis for liability on the part of the District[.]" *Doe,* 697 A.2d at 27 & n.6.  Importantly, "[t]he relevant inquiry for purposes of this case is not the physical harm that [Ware] suffered . . .; rather, it is the District's alleged failure to intervene" before Brooks harmed her. *Id.* at 27.  So the "inquiry in this case must focus on whether the police reports adequately described *the District's role* in" Ware's injuries. *Id*.

The Arrest Report does not sufficiently describe the District's relationship to Ware's injuries.  The Report merely reveals that Brooks was Ware's "court ordered mentor/tutor." *See* ECF No. 15-2.  It does not suggest that the District had any prior knowledge of his misconduct nor that it had any prior knowledge of his propensity to engage in such misconduct. *See id*.  The Report also does not imply that the District failed to intervene.

To the contrary, the Report undercuts Ware's claims that the District knew or should have known about her abuse:  It suggests that Brooks was no longer her tutor at

the time of the alleged assaults.  Indeed, it explains that Brooks picked her up from her father's house and then assaulted her outside of the District.  *See id.*; *Patrick v. District of Columbia*, 126 F. Supp. 3d 132, 138 (D.D.C. 2015) ("Police reports found in other cases to constitute sufficient notice under section 12-309 contained specific details about the District's actions or inaction that gave rise to an inference that a plaintiff might allege that the District violated some law or legal duty.").  Because the Arrest Report "do[es] not establish any prior knowledge *by the District* that [Ware] had been . . . abused," it cannot clear § 12-309's bar.  *Doe*, 697 A.2d at 27.  Nor would the Arrest Report lead one to believe that the D.C. government was responsible for Brooks's misconduct.

Because neither Ware's letter nor the Arrest Report provides the notice required by § 12-309, the Court must dismiss her common law claims against the District.

### B.

Leaving aside the statutory notice requirement, Ware's common law claims fail against the District on the merits.  Because this Court exercises supplemental jurisdiction over these state law claims, the Court applies D.C. law.  *See Dimond v. District of Columbia*, 792 F.2d 179, 188 n.6 (D.C. Cir. 1986).

### 1.

Count One of the Complaint alleges sexual battery and abuse "by defendant's employee and agent Brooks."  Compl. at 10.  Ware, however, did not name Brooks as a defendant in this case.  *See generally id*.  And she does not say whether she brings this claim against the District, Golden, or both.  *See id.* at 10.  In her Opposition, Ware does not contest the District's claim that it cannot be held directly liable for Brooks's misbehavior.  Opp'n 8–10.  Thus, the Court will dismiss Count One against the District as conceded.

**2.**

Ware also argues that the District is vicariously liable for Brooks's sexual battery. Compl. ¶ 62. The District counters that Brooks was not acting within the scope of his employment when he assaulted Ware. Def.'s Mot. 20–24. The Court agrees with the District.

"Under the doctrine of *respondeat superior*, an employer may be held liable for the acts of his employees within the scope of their employment." *Boykin v. District of Columbia*, 484 A.2d 560, 561 (D.C. 1979). In defining scope of employment, the District follows the Restatement (Second) of Agency (1958) (Restatement). *See Council of Am. Islamic Relations v. Ballenge*r, 444 F.3d 659, 663 (D.C. Cir. 2006). Under the Restatement, an employee's conduct falls outside the scope of employment "if it is different in kind from that authorized, far beyond the authorized time or space limits, or too little actuated by a purpose to serve the master." Restatement § 228(2). Ware fails to allege plausibly that Brooks was acting within the scope of his employment as a tutor when he sexually assaulted Ware.

To begin, Brooks's conduct plainly "is different in kind from that authorized" by his employers. *Id*. According to Ware, Brooks was "employed by Golden to provide tutorial serves as contracted between Golden and the District of Columbia." Compl. ¶ 9. And Ware alleges that "Brooks battered [her] and engaged in willful and harmful sexual contact with her . . . without legal consent." *Id.* ¶ 48–49. Even drawing all reasonable inferences in Ware's favor, no one supposes that sexual abuse is conduct that the District or Golden hired him to perform. Similarly, there is no allegation that Brooks's conduct was "actuated by a purpose to serve" the District or Golden. Restatement § 228(2). Because "[t]here is no suggestion here . . . that [Brooks's] conduct was the outgrowth of any action undertaken in the employer's behalf,"

Brooks, "as a matter of law, . . . was acting outside the scope of his employment when he assaulted" Ware. *Boykin*, 484 A.2d at 564.

Ware's arguments to the contrary are not persuasive.[5]  She first argues that Brooks was acting within the scope of his employment under the five-prong test set out in *Moorehead v. District of Columbia*, 747 A.2d 138, 143 (D.C. 2000).  Opp'n 8–9.  *Moorehead* is irrelevant. Courts use that test "when determining whether there is a [employer-employee] relationship" to begin with.  747 A.2d at 143.  It is not used to analyze scope of employment.  *See, e.g.*, *Wadley v. Aspillaga*, 163 F. Supp. 2d 1, 7 (D.D.C. 2001) (using *Moorehead* test to determine existence of employment relationship and Restatement to analyze scope of employment).

Ware's citation to *Hechinger Co. v. Johnson*, 761 A.2d 15, 25 (D.C. 2000), is also unpersuasive.  She relies on *Hechinger* for the proposition that when "'there is evidence that the assault grew out of a job-related controversy,' an assault may very well fall within the scope of the perpetrator's employment."  Opp'n 10 (citing *id.*).  But the assault in *Hechinger* was "motivated by a desire to require [plaintiff] to pay for [goods] which [the employee] presumed to be the property of his employer," and a jury could conclude that "the employee acted on behalf of his employer to resolve a job-related dispute."  761 A.2d at 25.  There are no similar allegations here.

Because Ware fails to plausibly allege that Brooks acted within the scope of his employment at the time of her assault, the Court will dismiss Count II against the District.

---

[5]  Without citation, Ware vaguely suggests that the District is liable because "Brook[s]'s was clothed with the authority of the D.C. Government in his interactions with [Ware.]"  Opp'n 8.  If she argues that Brooks had apparent authority to assault her, this theory fails because Ware pleads no facts to suggest that she "believed . . . that [Brooks] was acting within the color of his authority" when he assaulted her.  *Gary*, 59 F.3d at 1397–98.

**3.**

Next, Ware alleges that the District was negligent by assigning Brooks to be her tutor, despite knowing that Ware was vulnerable to sexual exploitation.  The District argues that Ware fails to sufficiently allege a breach of duty to state a claim for negligence.  Def.'s Mot. 25–27. Here too, the Court agrees with the District.

To make out her negligence claim, Ware must show (1) that the District owed her a duty of care, (2) that it breached that duty, (3) that she was injured by that breach, and (4) that the breach proximately caused her injury.  *Simms v. District of Columbia*, 699 F. Supp. 2d 217, 227 (D.D.C. 2010).  A claim of negligence "may not rest on mere conclusory assertions as to the existence of any element of the claim, including duty."  *Id.*  (cleaned up).  Thus, Ware "must allege facts which show that the [District] breached some legally imposed duty owed to" her.  *Id.* (cleaned up)*.*  But she fails to show that the District breached any such duty.  Ware's vague and conclusory assertions are not enough.

The gist of Ware's claim is that the District was negligent by assigning Brooks as Ware's tutor despite her risk of sexual exploitation.  In support, Ware alleges that "CSSD employees" observed Brooks "display inappropriate predatory-like behaviors," and that those employees "reported their observations and concerns orally and in writing to [District] officials, supervisors and administrators."  Compl. ¶ 88.  But these vague allegations based on unfounded speculation are not enough to plausibly allege a breach of duty by the District.  *See Raihan v. Geo. Wash. Univ.*, 324 F. Supp. 3d 102, 114 (D.D.C. 2018) ("The unadorned claim that 'upon information and belief, Mr. Slifka had previously caused harm to other sexual harassment victims' who told the University . . . will not suffice" "to warrant the inference that the University had actual or constructive knowledge of any prior misbehavior." (cleaned up)).

19

Similarly, Ware's bald assertion that the District "failed to take even a scintilla of reasonable security precautions," Compl. ¶ 91, lacks factual matter to support it and is not well-pleaded.  *See Iqbal*, 556 U.S. at 678.  And Ware's negligence claim is also undercut by her own allegation that the District has "*mandated* training for all youth-service providers based in commissioned research, issued annual studies, established profiles of perpetrators, and distributed statistics on potential and actual sexual victimization and trafficking of D.C. pre-and-post-adjudicated juveniles, with a focus on African-American teenage girls." Compl. ¶ 44. Without more, Ware fails to state a claim of negligence against the District.  And because she has not plausibly alleged negligence, she has not met the higher burden of pleading gross negligence.

### 4.

Ware also alleges negligent hiring, training, supervision, and retention.  To state a negligent hiring or retention claim in the District of Columbia, Ware must show "that the employer breached a duty to plaintiff to use reasonable care in the supervision or retention of an employee which proximately caused harm to plaintiff." *Phelan v. City of Mount Rainier*, 805 A.2d 930, 940 (D.C. 2002).  And to show breach, she must plead "that an employer knew or should have known its employee behaved in a dangerous or otherwise incompetent manner, and that the employer, armed with that actual or constructive knowledge, failed to adequately supervise the employee." *Brown v. Argenbright Sec., Inc.*, 782 A.2d 752, 760 (D.C. 2001).

This claim fails for two reasons.  First, as explained above, Ware has offered no well-pleaded facts to reasonably conclude that the District had "actual or constructive knowledge" of any prior misconduct from Brooks.  *Id.*  Nor does Ware plausibly allege that the District "failed to adequately supervise" Brooks.  *Id.*  The District required Golden to perform criminal

background checks of its prospective employees working with children, *see* D.C. Code § 4-1501.01 *et seq.*, and has also promulgated regulations governing the responsibilities and authority of entities such as Golden to take action against parties that violate these requirements, *see* D.C. Mun. Regs. Tit. 27, § 500 *et seq.* And the Court need not accept Ware's conclusory, threadbare assertion, that the "District failed to employ an adequate . . . training process when it approved and contracted with Golden as its service delivery contractors." Compl. ¶ 67; *Iqbal*, 556 U.S. at 678. Thus, the Court will dismiss Ware's claim against the District for negligent hiring, training, and supervision.

### 5.

Last up is Ware's claim for intentional infliction of emotional distress. In the District of Columbia, the tort of intentional infliction of emotional distress requires (1) extreme and outrageous conduct by the defendant that (2) intentionally or recklessly (3) causes the plaintiff severe emotional distress. *Robinson v. Howard Univ.,* 335 F. Supp. 3d 13, 30 (D.D.C. 2018), *aff'd sub. nom., Robinson v. Wutoh*, 788 F. App'x. 738 (D.C. Cir. 2019). This standard requires the defendant's conduct to be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Id.* (quoting *Sere v. Group Hospitalization, Inc.*, 443 A.2d 33, 37 (D.C. 1982)).

Ware alleges that Brooks's assault was extreme and outrageous, and that the District is vicariously liable under the doctrine of *respondeat superior*. Opp'n 12. As this Court has already concluded, *see* Section IV.B.2., the District is not liable vicariously liable for Brooks's conduct because he was acting outside the scope of his employment when he sexually assaulted Ware. *See* Restatement § 228(2). The Court will thus dismiss Count VI against the District.

## V.

In a last-ditch effort, Ware asks the Court "to note" an amended complaint attached to her Opposition.  Opp'n 12; *see* ECF No. 15-3.  To begin, Ware was required to seek leave of Court to amend her Complaint, *see* Fed. R. Civ. P. 15(a)(1), and "a bare request in an opposition to a motion to dismiss—without any indication of the particular grounds on which amendment is sought" does not comply with the Rule governing amendment.  *Confederate Mem'l Ass'n, Inc. v. Hines*, 995 F.2d 295, 299 (D.C. Cir. 1993).  More, Ware's proposed amended complaint violates this Court's Standing Order, which requires that any amended pleading come with a redline comparison of the original and amended pleading.  *See* Nov. 4, 2021, Order, ECF No. 3.

Leaving aside these procedural defects, the Court would still deny Ware leave to amend.  Rule 15 provides that "[t]he court should freely give leave when justice so requires."  Fed. R. Civ. P. 15(a)(2).  With that said, "the Court may deny a motion to amend if such amendment would be futile."  *De Sousa v. Dep't of State*, 840 F. Supp. 2d 92, 113 (D.D.C. 2012).  "An amendment would be futile if it . . . fails to state a legal theory, or could not withstand a motion to dismiss."  *Id.*  As with her operative Complaint*,* Ware's proposed amended pleading would not survive a motion to dismiss.

According to Ware, her amended complaint "dismisses its 14th [A]mendment claim and more artfully states its federal and state common law claims."  Opp'n 12.  But Ware identifies no new factual allegations that would cure the deficiencies in her complaint.  After independently reviewing the proposed amendments in the light most favorable Ware, the Court holds that it fails to state any claim.  Thus, amendment would be futile.

**VI.**

Ware has also moved the Court for entry of default judgment against Golden "in an amount in excess of $250,000.00." Pl.'s Mot. 1. Because Ware fails to state a claim against Golden, the Court will deny the motion for default judgment.

**A.**

Federal Rule of Civil Procedure 55 establishes a two-step process for default judgments. First, the Clerk of Court enters a default on the docket if the "party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend." Fed. R. Civ. P. 55(a). Then the plaintiff moves for a default judgment under Rule 55(b).

But entry of a default *judgment* "is not automatic." *Mwani v. Bin Laden*, 417 F.3d 1, 6 (D.C. Cir. 2005). "Default establishes [only] the defaulting party's liability for the well-pleaded allegations of the complaint." *Boland v. Elite Terrazzo Flooring, Inc.*, 763 F. Supp. 2d 64, 67 (D.D.C. 2011). So the Court may "deny an application for default judgment where the allegations of the complaint, even if true, are legally insufficient to make out a claim." *Gutierrez v. Berg Contracting Inc.*, No. 99-2044 (TAF), 2000 WL 331721, at *2 (D.D.C. March 20, 2000).

If liability is established, "the Court must make an independent evaluation of the damages to be awarded." *U.S. ex rel. Guo v. Nat'l Endowment for Democracy*, No. 18-cv-02986 (TNM), 2022 WL 503765, at *2 (D.D.C. Feb. 18, 2022) (cleaned up). Plaintiffs must prove the amount of damages sought "to a reasonable certainty." *Id.* (cleaned up). To determine the appropriate sum, courts "may rely on detailed affidavits or documentary evidence." *Id.* (cleaned up).

**B.**

Ware has no right to default judgment. Because Golden has not responded to the Complaint or the Motion for Default Judgment, it has failed to contest liability. But the Court

23

must still independently "determine whether the allegations in the Complaint are well-pleaded." *Bozzuto Contractors, Inc. v. Evans*, 19-cv-03292 (TNM), 2021 WL 1564437, at *3 (D.D.C. April 21, 2021).  Ware levies the same key allegations against both Golden and the District.  *See generally* Compl.; *see also* Compl. ¶ 26 ("Golden simultaneously shared responsibility for training, managing, and supervising its tutors with the District's . . . officials and employees.").  And, for the same reasons given about the District, Ware's common law actions fail to state a claim.  *See* Section IV.B.  Ware's allegations are not well-pleaded, and thus entry of default judgment against Golden is not warranted.  *See Bozzuto*, 2021 WL 1564437 at *3.

Even if Ware had established Golden's liability, the Court would still deny her motion.  Ware has failed to prove her damages "to a reasonable certainty."  *Elite Terrazzo Flooring*, 763 F. Supp. 2d at 68.  She requests entry of default judgment "in an amount in excess of $250,000.00" "to be determined by this Court."  Pl.'s Mot. 1.  In support, Ware submitted three court-ordered psychiatric evaluations.  ECF No. 15.  The first report offers little help because it was filed in December 2016, well before Brooks assaulted Ware.  *See id.* at 27.  The other reports are more useful.  The second report notes that "mentoring services previously provided to [Ware] were discontinued due to reports that the assigned male mentor was engaging in a sexual relationship with the youth."  *Id.* at 16.  That report recommends continued trauma-focused therapy among other kinds of counseling.  *Id.* at 24.

The last and most recent evaluation is most relevant.  The report notes that "it was alleged that since the age of 14 [Ware] was a victim of sexual abuse by a mentor from the Court" and that Ware "was provided with a provisional diagnosis of [Post Traumatic Stress Disorder]" as a result.  *Id.* at 7-8.  The evaluation recommends many treatments, including prescription medication and different kinds of therapy.  In particular, Ware "needs intensive therapeutic and

behavioral intervention in a fully secure 24 hour Psychiatric Residential Treatment Facility . . . for a minimum of 6-8 months." *Id.* at 8.

The Court acknowledges the effect that Brooks's assault had on Ware's mental health and well-being. Even so, that does not relieve the Court of its independent duty to ensure Ware proves these damages "to a reasonable certainty." *Elite Terrazzo Flooring*, 763 F. Supp. 2d at 68. Ware explains that she has been unable to afford more counseling and treatment, but she has offered no calculations or estimates as to how much her expected treatment would cost. *See generally* Pl.'s Mot. Indeed, Ware "urge[s] the [C]ourt to allow her sufficient additional time . . . to supplement medical assessments regarding her emotional and mental well-being and care as the [C]ourt assesses her damage claim." *Id.* at 6. But she has offered no additional information in the nearly three months since then. At this point, the Court cannot conclude that Ware has proven her requested damages "to a reasonable certainty." *Elite Terrazzo Flooring*, 763 F. Supp. 2d at 68.

In sum, although Golden has not filed an answer, the Court has determined that Ware has failed to state a claim against it. More, she has failed sufficiently to show the amount of her requested damages. There is no basis for the entry of a default judgment. And "where, as here, the basis for dismissal is applicable as to another defendant, it is proper to make the holding applicable to the non-moving party as well." *Harris*, 404 F. Supp. 3d at 196 n.2 (cleaned up). Thus, as with the District, the Court will dismiss the common law actions against Golden for failure to state a claim.

**VII.**

For these reasons, the Court will grant in part the District's motion to dismiss, but it will deny the motion insofar as it requests dismissal with prejudice.  Dismissals with prejudice under Rule 12(b)(6) are disfavored in this Circuit, and the "standard for dismissing a complaint with prejudice is high."  *Coon v. Wood*, 68 F. Supp. 3d 77, 82 (D.D.C. 2014); *see also, e.g.*, *Rudder v. Williams*, 666 F.3d 790, 794–95 (D.C. Cir. 2012) (explaining that dismissal with prejudice is "the exception, not the rule" and that it is "warranted only when the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency").  That high standard is not met here.

The Court will also deny Ware's motion for default judgment and dismiss the claims against Golden without prejudice.  A separate Order will issue.


Dated: November 1, 2022                             _____

                                                           TREVOR N. McFADDEN, U.S.D.J.